

FILED & JUDGMENT ENTERED
Steven T. Salata

Oct 24 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

DESIGNLINE CORPORATION,            CASE NO. 13-31943
                                   CHAPTER 11
    DEBTOR.

IN RE:

DESIGNLINE USA, LLC,               CASE NO. 13-31944
                                   CHAPTER 11
    DEBTOR.                        (JOINTLY ADMINISTERED)

**ORDER APPROVING (A) THE PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (B) ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

THIS MATTER coming on before this Court upon motion of the Debtors, by and through the Chief Restructuring Officer (the "CRO"), seeking entry of an order approving (a) the proposed sale of substantially all assets of the Debtors free and clear of all liens, claims, encumbrances and other interests and (b) assumption, assignment, and sale of certain executory contracts and unexpired leases (the "Motion"). The Motion was served on all creditors and parties in interest and no objections to the Motion were filed. Now therefore, the Court finds as follows:

1.    On August 15, 2013 (the "Petition Date"), Designline Corporation and

DesignLine, USA (collectively, the "<u>Debtors</u>") filed chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware. The Debtors' cases were transferred to the United States Bankruptcy Court for the Western District of North Carolina by order dated September 4, 2013.

2.  An Official Committee of Unsecured Creditors (the "<u>Committee</u>") was appointed on August 27, 2013.

3.  The Debtors are Delaware Corporations with their principal place of business in Charlotte, North Carolina.

4.  Katie Goodman of GGG Partners is serving as the CRO of the Debtors.

5.  Prior to the Petition Date, the Debtors obtained significant investment from various parties and also entered into several financing arrangements. There is a First Lien Senior Secured Facility in the amount of $8,777,510 and a Second Lien Senior Secured Facility in the amount of $19,474,557, as reflected in the Debtors' Schedules and documents related to the Final DIP Order entered October 10, 2013. As part of the Second Lien Senior Secured Facility, the Debtors and the holders of the First Lien Senior Secured Facility entered into certain Specified Vehicle Lien Loan Agreements pursuant to which the Debtors granted, with the assent of the senior debt holders, a $3 million first priority security interest in individual vehicles and a second priority security interest in the collateral securing the First Lien Senior Secured Facility.

6.  By Order dated September 13, 2013, the Debtors were authorized to borrow $500,000 from Cyrus Opportunities Master Fund II Ltd., Cyrus Select Opportunities Master Fund, Ltd., and Crescent I, LP (collectively, the "Cyrus Entities") as interim debtor in possession financing (the "Interim DIP Loan"). The Interim DIP Loan is secured by a lien on all of the DIP Collateral (as defined in the Interim DIP Order) pursuant to sections 364(c) and (d) of the

Bankruptcy Code, which lien is senior to the Primed Liens but junior to (a) a Carve-Out, and (b) the First Priority Specified Vehicle Lien in the principal amount of $3 million.

7. The Final DIP Order authorizes the Debtors to borrow a total of $1.5 million (the "Final DIP Loan") from the Cyrus Entities to fund the Debtors' expenses and costs of the chapter 11 through November 30, 2013. As evidenced by a budget prepared by the CRO, the Final DIP Loan will be fully utilized by early November 2013.

8. The Debtors seek entry of an order allowing them to sell substantially all of the assets of their estates, including, without limitation, all equipment, machinery, inventory, supplies, commercial customer data and information, real property, software, intellectual property, books, records, accounts, chattel paper and electronic chattel paper, documents of title, certain leases, goods, investment property and vehicles (the "Assets"). On October 7, 2013, the Court approved a sale and bidding procedures (the "Bidding Procedures Order"). No Stalking Horse Agreement was filed with the Court. If "Qualified Bids" are received on or before October 23, 2013 at 12:00 noon, the Debtors will conduct an Auction on October 28, 2013 at the offices of Nelson Mullins Riley & Scarborough LLC, in Charlotte, North Carolina at 10:00 a.m. Eastern Time (the "Auction").

9. After the Auction, a hearing to approve a sale or sales to the highest bidders will be conducted on October 29, 2013 at 2:00 p.m. at the United States Bankruptcy Court, Jonas Federal Building, 401 West Trade Street, Charlotte, North Carolina to approve the sale of the Assets to the Successful Bidder.

10. The Debtors seek to sell the Assets to the Successful Bidder at the Auction free and clear of all liens, claims, and encumbrances as allowed pursuant to §363(f).

11. The Credit Agreement entered into with the Cyrus Entities and filed with the

Court on September 20, 2013 as amended on October 10, 2013, provides as follows in Section 2.4(b): In the event and on each occasion that any Net Proceeds are received by or on behalf of the Debtors, subject to the Carve-Out, the Debtors shall, within two (2) Business Days after such Net Proceeds are received, prepay cash Borrowings in an aggregate amount equal to 100% of the amount of such Net Proceeds, unless otherwise ordered by the Court; provided, however, the first $3 million of Net Proceeds from the sale of the Specified Vehicle Collateral shall, unless otherwise ordered by the Court, be paid to the holders of the First Priority Specified Vehicle Lien within two (2) Business Days after such Net Proceeds are received by the Debtors to pay the First Priority Specified Vehicle Lien. In the event there are any Net Proceeds available following payment of the Cyrus Entities and the First Priority Specified Vehicle Lien, those proceeds will be distributed unless otherwise ordered by the Court.

12. Net Proceeds as used above is defined in the Credit Agreement as the gross cash proceeds received from such sale or other disposition of assets, net of actual transaction costs (including, without limitation, any customary selling commissions, legal, advisory and other fees and expenses associated with the sale) and with payment of the Net Proceeds as set forth in paragraph of this Motion.

13. In addition to the sale of the Assets, the Debtors also seek Court authority to assume and assign certain Contracts and Leases to the Successful Bidder as part of the sale of Assets pursuant to the procedures set forth in the Bidding Procedures Order.

14. The Court has been informed by the Debtors that the Debtors have marketed their assets for approximately one year.

15. The Debtors have shown a "sound business purpose" to proceed with a sale of its Assets outside the ordinary course of business before confirmation of a plan of reorganization.

16. The proposed immediate sale of the Assets, as set forth in the Motion and as approved by the Court in the Bidding Procedures Order satisfies the sound business purpose test.

17. The sale procedures have been proposed in good faith. In pleadings filed early in these cases, the Debtors informed the Court of the need to proceed with an expeditious sale procedure. The marketing has been and continues to be conducted by the CRO.

18. Adequate and reasonable notice of the sale procedures have been provided to all interested parties. Information regarding the sale procedures will be provided to all key parties in this case and are available on PACER. In addition, the CRO will provide the bidding procedures approved by the Court on all parties previously expressing an interest in purchasing the Assets.

19. The purchase price for the Assets is being obtained in a fair and reasonable manner. The Debtors, in conjunction with the Cyrus Entities and the Committee, will determine the Successful Bid and the final APA and Qualified Bidder will be approved by this Court at the Sale Hearing.

20. The Pre-Petition Secured Parties, as defined in the Motion, have not objected to the Debtors request to sell the Assets under section 363(f) free and clear of any and all liens, interests, or encumbrances that may be asserted. However, the Cyrus Entities and the Committee have reserved all rights to review and object to a sale to the Successful Bidder.

21. No other parties have indicated that they have a lien on the Assets. To the extent that any other parties hold liens, the liens will attach to the proceeds of the sale to the extent the lien holders may have had any interest in the Assets, and the Debtors reserve all rights to object to the validity of any such liens.

22. The Debtors may enter into any related agreements, documents or other

instruments, closing statements, amendments to the sale agreement or other reasonable and necessary documents as necessary to effectuate the closing of the sale of the Assets.

23. The Successful Bidder's Asset Purchase Agreement may designate contracts or leases to be assumed and assigned (the "Assumed Contracts"). The Leases and Contracts that the Debtors anticipate may become Assumed Contracts will be set forth in a Cure Notice as required in the Bidding Procedures Order.

24. The Debtors shall submit, and will demonstrate at the Sale Approval Hearing or any subsequent hearings, as the case may be, that there exist adequate business justifications for the assumption and assignment of the Assumed Contracts and that all requirements to assumption and assignment, including adequate assurance of future performance by the Successful Bidder, have been satisfied.

25. Any anti-assignment provisions shall not restrict, limit, or prohibit the assumption, assignment, and sale any Assumed Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

26. The terms of sale to the Successful Bidder will be negotiated between the Debtors and the Successful Bidder, subject to approval of the Cyrus Entities and the Committee, and will be negotiated at arm's length and in good faith. Any interest or affiliation of the Successful Bidder with the Debtors, the CRO, the Pre-Petition Secured Parties, or any party related or affiliated with the foregoing will be fully disclosed. The Debtors will demonstrate that the Successful Bidder submitted its bid at arms' length and in good faith, is not affiliated with the Debtors or the CRO, or their officers, or directors and does not hold any interest in the Debtors.

27. This Court will enter an order after evidence is presented at the Sale Hearing, to

find that the Successful Bidder has acted in good faith and will be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code; now therefore,

    IT IS ORDERED AS FOLLOWS:

    (a)    On October 29, 2013, the Court will conduct the Sale Hearing to approve the sale of the Assets to the Successful Bidder following implementation of the Bidding Procedures Order and the terms of this Order;

    (b)    The Assets included within the Asset Purchase Agreement of the Successful Bidder will be sold free and clear of all liens, claims, or encumbrances;

    (c)    All liens or claims of any nature shall attach to the proceeds of the sale and any persons and entities holding alleged liens and/or claims of any kind and nature with respect to the Assets will be barred from asserting such liens and/or claims against the Successful Bidder, its successors and assigns, or against the Assets;

    (d)    The Debtors are authorized to assume and assign the Assumed Contracts to the Successful Bidder subject to the terms provided in the Bidding Procedures Order, including the establishment of Cure Amounts;

    (e)    Any anti-assignment provisions shall not restrict, limit, or prohibit the assumption, assignment, and sale of any Assumed Contracts and such provisions are unenforceable within the meaning of section 365(f) of the Bankruptcy Code;

    (f)    The Court will hear evidence at the Sale Hearing to substantiate that the Successful Bidder is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, should be entitled to the protections afforded thereby;

    (g)    The Court authorizes the payment of the sale proceeds as provided in paragraph 11;

(h)     Unless otherwise ordered, the Court will waive the provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of the order so that any order entered hereunder can be effective immediately upon entry thereof.

*This Order has been signed electronically.*         *United States Bankruptcy Court*
*The Judge's signature and Court's seal*
*appear at the top of the Order.*